**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| TRACKTHINGS LLC,<br><br>     Plaintiff,<br><br>  v.<br><br>AMAZON.COM, INC., AMAZON.COM<br>SERVICES LLC, and EERO LLC,<br><br>     Defendants. | Case No. 6:23-cv-00133-ADA<br><br>**PUBLIC VERSION** |

**TRACKTHINGS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS FOR IMPROPER VENUE, FAILURE TO STATE A CLAIM,**
**AND TO TRANSFER VENUE**

**GILLAM AND SMITH, LLC**
Melissa Richards Smith
Texas State Bar No. 24001351
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

**SCHULTE ROTH & ZABEL LLP**
Timothy K. Gilman (*pro hac vice*)
Christopher M. Gerson (*pro hac vice*)
Ryan J. Singer (*pro hac vice*)
John P. Mixon (*pro hac vice*)

919 Third Avenue
New York, New York  10022
Telephone (212) 756-2000
Facsimile (212) 593-5955

*Attorneys for Plaintiff TrackThings LLC*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................................1

PROCEDURAL HISTORY....................................................................................................2

STATEMENT OF FACTS .....................................................................................................3

ARGUMENT ..........................................................................................................................5

I.      VENUE IS PROPER UNDER § 1400(B) AS TO BOTH DEFENDANTS.......................5

      A.      Legal Standard ...............................................................................................5

      B.      Amazon Services is the Alter Ego of eero .....................................................5

      C.      eero Has a Regular and Established Place of Business in This District .................9

            1.      The Tech Hub is a Physical Place in this District (*Cray* Factor 1) .............9

            2.      The Tech Hub is a Regular and Established Place of Business (*Cray* Factor 2)...........................................................................................10

            3.      The Tech Hub is the Place "of" eero ........................................................11

II.     THE NORTHERN DISTRICT OF CALIFORNIA IS NOT A MORE CONVENIENT VENUE THAN THE WESTERN DISTRICT OF TEXAS ..................13

      A.      Legal Standard .............................................................................................13

      B.      The Private Factors Weigh Against Transfer................................................14

            1.      The Relative Ease of Access to Sources of Proof Disfavors Transfer.......14

            2.      The Availability of Compulsory Process to Secure the Attendance of Non-Party Witnesses Weighs Against Transfer. .....................................15

            3.      The Cost of Attendance for Willing Witnesses Strongly Weighs Against Transfer...........................................................................................16

            4.      All Other Practical Factors Weigh against Transfer Because of the Court's Familiarity with this Case and the Patents-in-Suit.......................17

      C.      The Public Interest Factors Weigh Against Transfer....................................18

            1.      Administrative Difficulties Flowing From Court Congestion Weighs Heavily Against Transfer.........................................................................18

2.      Local Interest in Having Localized Issues Decided at Home Weighs
        Against Transfer.......................................................................................18

3.      Familiarity with Governing Law and Potential Conflicts of Law .............20

III.    IN THE ALTERNATIVE, IF THE COURT FINDS THAT VENUE IS IMPROPER,
        THE APPROPRIATE FORUM IS THE DISTRICT OF DELAWARE..........................20

IV.     CONCLUSION...............................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aeritas, LLC v. Darden Corp.*,
6:20-cv-00938-ADA, 2021 WL 4868430 (W.D. Tex. Oct. 18, 2021) ....................................5

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020)..........................................................................................18

*BillJCo, LLC v. Apple, Inc.*,
No. 6:21-cv-00528, 2022 WL 607890 (W.D. Tex. Mar. 1, 2022)..........................................18

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017).................................................................................. *passim*

*E-System Design, Inc. v. Mentor Graphics Corp.*,
No. 4:17-cv-00682, 2018 WL 2463795 (E.D. Tex. June 1, 2018) .........................................17

*EcoFactor, Inc. v. Google LLC*,
No. 6-20-CV-00075, 2021 WL 1535413 (W.D. Tex. Apr. 16, 2021) ..............................15, 16

*Fintiv, Inc. v. Apple Inc.*,
No. 6:18-cv-00372, 2019 WL 4743678 (W.D. Tex. Sept. 10, 2019) ..............................14, 15

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)..........................................................................................18

*In re Google LLC*,
949 F.3d 1338 (Fed. Cir. 2020)......................................................................................9, 10

*Gundle Lining Const. Corp. v. Adams Cnty. Asphalt, Inc.*,
85 F.3d 201 (5th Cir. 1996) ................................................................................................7

*Intell. Ventures I LLC v. Altera Corp.*,
842 F. Supp. 2d 744 (D. Del. 2012)....................................................................................20

*Intirion Corp. v. College Prod.*,
No. 6:22-cv-00459-ADA, 2023 WL 2904584 (W.D. Tex. Apr. 11, 2023) ..............................5

*Monterey Rsch., LLC v. Broadcom Corp.*,
No. W-21-CV-00542-ADA, 2022 WL 526242 (W.D. Tex. Feb. 21, 2022)............................18

*Nat'l Steel Car Ltd. v. Greenbrier Cos.*,
No. 6:19-cv-721-ADA, 2020 WL 4289388 (W.D. Tex. July 27, 2020)..............................6, 7

*Quest NetTech Corp. v. Apple, Inc.*,
    No. 2:19-cv-118, 2019 WL 6344267 (E.D. Tex. Nov. 27, 2019)............................................13

*In re Radmax, Ltd.*,
    720 F.3d 285 (5th Cir. 2013) ....................................................................................................14

*Regents of the Univ. of California v. Eli Lilly & Co.*,
    119 F.3d 1559 (Fed. Cir. 1997)................................................................................................20

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988)....................................................................................................................13

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    581 U.S. 258 (2017)....................................................................................................................5

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)................................................................................................13

*United Servs. Auto. Ass'n v. PNC Bank N.A.*,
    No. 2:20-CV-00319-JRG, 2021 WL 4453590 (E.D. Tex. Sept. 29, 2021) .............................18

*In re Vistaprint Ltd.*,
    628 F.3d 1342 (Fed. Cir. 2010)..........................................................................................13, 18

*In re Volkswagen of Am., Inc.*,
    566 F.3d 1349 (Fed. Cir. 2009)................................................................................................17

*In re Volkswagen, Inc.*,
    545 F.3d 304 (5th Cir. 2008) ...................................................................................................13

*WSOU Invs., LLC, d/b/a/ Brazos Licensing and Dev. v. Canon, Inc.*,
    No. 6:20-CV-00980-ADA, D.I. No. 137 (W.D. Tex. Feb. 25, 2022).............................7, 8, 9

*In re ZTE (USA) Inc.*,
    890 F.3d 1008 (Fed. Cir. 2018)..........................................................................................5, 12

**Statutes**

28 U.S.C. § 1400(b) .........................................................................................................................5

28 U.S.C. § 1404(a) .......................................................................................................................13

28 U.S.C. § 1406(a) .......................................................................................................................20

**Rules**

Rule 12(b)(3).....................................................................................................................................5

**INTRODUCTION**

After TrackThings filed its original claims against Defendants for infringement, they moved to transfer the case to the Northern District of California ("NDCA"). The Court denied Defendants' motion, and the case proceeded through fact discovery, claim construction, and expert reports. Now that TrackThings has refiled its claims to moot a standing dispute, Defendants seek a second bite at the apple and again move to dismiss or transfer to NDCA. This motion should fail as Defendants' prior motion failed, especially as transfer now risks the parties' litigation progress and the Court's familiarity with the subject matter of the dispute.

To streamline the dispute, the parties have agreed to dismiss Amazon.com, Inc. as it is a mere holding company for the other two Defendants, who remain financially sound enough in their own stead to satisfy any judgment. Venue is proper in this District for those Defendants. Defendants do not contest that venue is proper for Amazon.com Services LLC ("Amazon Services"). And eero LLC ("eero") is properly venued here for two independent reasons. First, Amazon Services is its alter ego—Amazon Services actually employs and pays all "eero" employees, the entities have common stock ownership, Amazon files consolidated financial statements for its subsidiaries, eero technology is built into "Amazon" products, and Amazon Services registers revenue attributable to "eero" products. The lines have become so blurred between eero and Amazon Services that the two have become one. Second, the Amazon Tech Hub located in Austin is eero's regular and established place of business. "eero" employees—to the extent they are distinct from Amazon Services' employees—are assigned to the facility and regularly access it to perform work for eero.

As Amazon has represented, this District "has a significant local interest in Amazon" and a "considerable interest in deciding" Amazon's patent disputes. Amazon employees regularly access documents from this District, this forum is more convenient for Plaintiff and not relatively

inconvenient for Defendants' witnesses (including its New York-based CTO who testified twice in the parties' prior litigation), and judicial economy significantly favors keeping this case in a forum that is familiar with the claims at issue.[1] Accordingly, Defendants' motion should be denied.

## PROCEDURAL HISTORY

This is the second case between TrackThings and Defendants involving the same patents-in-suit and asserted claims. TrackThings filed the first case in this District on July 13, 2021 (Civil Action No. 6:21-cv-00720, the "Prior Action"). In that case—after contentions, disclosures, and *Markman* exchanges had occurred—Defendants moved to transfer to the NDCA for convenience based on similar facts to those here. (Prior Action, D.I. 41.) Notably, Defendants did not contest venue, instead conceding that it was proper. (Prior Action, D.I. 68, ¶ 14.) This Court denied Defendants' motion. (Prior Action, D.I. 61.) Thereafter, the Court decided *Markman* (Prior Action, D.I. 67, 70) and the parties served final contentions, completed fact discovery, and served opening expert reports. After Defendants' raised a standing challenge—that the patents-in-suit were owned by TrackThings' president as opposed to TrackThings itself when the complaint was filed— TrackThings filed a new Complaint to moot the issue on February 17, 2023. (D.I. 1.) TrackThings' hope was to consolidate the two matters and continue along the existing schedule, as was done in the parallel *NETGEAR* litigation in Delaware.

Instead, Defendants here argued that they should be permitted to re-challenge venue since this case was nominally a new action. Defendants filed the instant motion to again attempt to transfer this case to the NDCA—a court that is unfamiliar with the issues in this case. (D.I. 32,

---

[1] If any defect in venue exists for eero—which it does not, as discussed below—then the case should be transferred to the District of Delaware where TrackThings' parallel suit against NETGEAR, Inc. is pending. The defendants are amenable to that venue, the same three patents are at issue, and the Delaware court is well-familiar with the technology and patents, having received briefing and heard argument on both claim construction and § 101 defenses.

"Mot.") Defendants also purport that venue has somehow become improper for eero for this case, even though they admitted it was proper in the Prior Action by failing to contest it (and eero's presence here has only grown since). Defendants also challenged whether venue was proper for Amazon.com, Inc., but the parties have stipulated to dismiss Amazon.com, Inc. based on Defendants' representations that it is a mere holding company and that the remaining Defendants are capable of satisfying any judgment. (D.I. 44.)

## STATEMENT OF FACTS

The two remaining Defendants—Amazon Services and eero—are both "Amazon" entities. Texas is the third largest state for Amazon employment with about 88,000 employees here, including a significant portion in this District. (*See* Declaration of John P. Mixon, Ex. 1.)[2] In Austin, Amazon employs over 3,000 at its "Tech Hub." (Ex. 2.) Amazon also employs more than 2,000 individuals at its fulfillment center in Waco, for which it obtained a $9.45 million tax break. (Exs. 3, 56.) As discussed in greater detail below, dozens of Amazon employees within this District directly work on the Accused Products and convoyed products.

The Accused Products in this case are eero mesh networking devices, which expand on and improve a home's wireless network. Amazon acquired eero in 2019 to help its customers better connect smart-home devices like the Amazon Echo and Amazon Ring products to the Internet by integrating and bundling those devices with the Accused Products. (*See* Ex. 4.) Certain Ring and Echo devices now have built-in eero capabilities. (Exs. 5-6.) eero's integration with Amazon has extended beyond the Accused Products themselves: eero is now fully owned by, and integrated with, Amazon. Indeed, all eero employees are now Amazon Services employees and are

---

[2] All citations to Exhibits hereinafter are to the Exhibits attached to the Declaration of John P. Mixon unless otherwise indicated.

indistinguishable from other Amazon Services employees for job postings, payroll, and other internal operations apart from the fact that they are "fully dedicated to working on eero products and services." (Ex. 7 at 1-2; Ex. 8 ("Lindsay Dep.") at 13:3-12, 17:14-18:14, 59:16-23.)

Amazon Services operates multiple corporate offices in Austin, which are colloquially referred to as the "Tech Hub," and employs over 3,000 tech and corporate employees. (*See* Mot. at 6; Lindsay Dep. at 43:19-44:14; Exs. 9-13). Of those employees, over 80 are "eero employees," who work on engineering, sales, marketing, and customer service related to the Accused Products. (*See* Ex. 14.) The number of "eero" employees has grown since the Prior Action (*compare* Prior Action, D.I. 41-1, ¶ 10 *with* D.I. 33-21 ("Lindsay Decl."), ¶ 10), and is likely to continue growing as Amazon Services regularly advertises eero-related jobs in Austin, Texas, (*See* Exs. 16-23, 36).

Defendants concede that any eero employee is permitted to access and work from the Tech Hub upon request, and eero employees regularly do. (Ex. 24; Lindsay Dep. at 23:6-16.) ████

████████████████████████████████████████████████████

████████████████████████████████████████████████

And eero's documents and source code are accessible to eero employees in this District including from the Tech Hub. (Lindsay Dep. at 23:17-25:7.) After the COVID-19 pandemic forced eero to close its WeWork office in Austin, the Tech Hub serves as the de facto office for eero's Austin employees, with eero employees—including Austin-based members of eero's operations, customer support, and engineering teams—regularly accessing that facility for work. (*See* Ex. 24; Ex. 25 ("XR Dep.") at 26:20-27:3; Lindsay Dep. at 27:17-28:20.)

TrackThings is a technology incubator in Murray Hill, New Jersey led by Thaddeus Gabara, a former AT&T Bell Labs engineer with over 120 patents on seminal inventions for semiconductor, microprocessor, and wireless networking technology. (D.I. 1, ¶ 28.) TrackThings

has a strong interest and preference that this case be decided here, including because it is a more convenient forum and this Court's proven track record to efficiently resolve patent cases before it, including the work done in the Prior Action.

## ARGUMENT

## I. VENUE IS PROPER UNDER § 1400(B) AS TO BOTH DEFENDANTS

### A. Legal Standard

On a motion under Rule 12(b)(3), the burden lies with the plaintiff to show that venue is proper. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). "The plaintiff need only make a *prima facie* showing to establish venue if the court does not hold an evidentiary hearing." *Aeritas, LLC v. Darden Corp.*, 6:20-cv-00938-ADA, 2021 WL 4868430, at *1 (W.D. Tex. Oct. 18, 2021) (citations omitted). Courts must view all of the facts in a light most favorable to plaintiff, and the court may look beyond the complaint to evidence submitted by the parties. *Intirion Corp. v. College Prod.*, No. 6:22-cv-00459-ADA, 2023 WL 2904584, at *2 (W.D. Tex. Apr. 11, 2023).

Venue for patent infringement cases is governed by 28 U.S.C. § 1400(b). *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 261 (2017); *In re ZTE*, 890 F.3d at 1012. Under section 1400(b), "[a]ny civil action for patent infringement may be brought [1] in the judicial district where the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business." *TC Heartland*, 581 U.S. at 261. For the second prong, there are "three general requirements relevant to the inquiry: (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

### B. Amazon Services is the Alter Ego of eero

Defendants attempt to play a corporate shell game to avoid venue in this District, labeling eero employees as "remote," even though they are free to use Amazon offices in this District at

will (and do so), and labeling Amazon's offices in this District as "not" eero's merely because they are purportedly operated by a different entity, Amazon Services—the very entity for which all eero employees work. If Defendants' approach were successful, any company could avoid venue in any district through a creative corporate structure, which is a practice that should not be sanctioned.

"Amazon *Services* … operates office space at the 'Tech Hub' at 11501 Alterra Parkway in Austin, Texas."[3] and "Amazon *Services* also operates the Waco fulfillment center." (Mot. at 6.) In other words, Defendants do not contest that venue is proper in this District as to Amazon Services. Rather, Defendants argue that eero does not operate at the "Tech Hub" because "it has no employees and conducts no business there," and that the Waco fulfillment center is not a place of eero because "eero does not own, lease, conduct business, or have employees there." (*Id.*) However, this argument fails as Amazon Services is eero's alter ego.

A court can impute another subsidiary's property to a defendant under a theory that it is the defendant's alter ego where "the lines between the defendant and the subsidiary … become so blurred that the two become one." *Nat'l Steel Car Ltd. v. Greenbrier Cos.*, No. 6:19-cv-721-ADA, 2020 WL 4289388, *2 (W.D. Tex. July 27, 2020) (citations omitted). In analyzing whether to impute a subsidiary's property to a defendant, "courts apply the law of the regional circuit." *See id.* (citations omitted). A party may rebut the presumption that entities follow corporate formalities by presenting clear evidence that there is no "'institutional independence of related corporate entities.'" *See id.* (citation omitted). Although there is typically a "heavy" burden to "impute the subsidiary's jurisdictional contacts to the parent,'" *see id.* (citations omitted), this standard "is 'relaxed where the alter-ego theory is used not to impose liability, but merely to establish

---

[3] The "Tech Hub" consists of three neighboring offices: 11501 Alterra Parkway, Austin, Texas ("AUS11"); 11601 Alterra Parkway, Austin, Texas ("AUS13"); and 11815 Alterra Parkway, Austin, Texas ("AUS16"). (*See* Exs. 26-27; Lindsay Dep. at 43:19-44:16, 45:9-10.)

jurisdiction'" or venue, *WSOU Invs., LLC, d/b/a/ Brazos Licensing and Dev. v. Canon, Inc.*, No. 6:20-CV-00980-ADA, D.I. 137 at 14 (W.D. Tex. Feb. 25, 2022) (citations omitted) (mandamus denied). Factors that Fifth Circuit courts consider to determine alter ego status include whether:

> (1) the parent and subsidiary have common stock ownership; (2) the parent and subsidiary have common directors or officers; (3) the parent and subsidiary have common business departments; (4) the parent and subsidiary file consolidated financial statements; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operated with grossly inadequate capital; (8) the parent pays salaries and other expenses of subsidiary; (9) the subsidiary receives no business except that given by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; (12) the subsidiary does not observe corporate formalities.

*See id.* (citation omitted). These factors are non-exhaustive and there is no single factor or test to determine whether a subsidiary is the alter ego of a defendant. *See id.* at *3. Courts must consider "the totality of the circumstances" to resolve the issue of alter ego. *See Gundle Lining Const. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 209 (5th Cir. 1996) (citations omitted).

Regarding Factor 1, Amazon Services and eero "have common stock ownership." Amazon Services and eero are both wholly owned subsidiaries of Amazon.com, Inc. Therefore, both entities' stock is directly owned by Amazon.com, Inc. and subject to common control.

With respect to Factor 2, Amazon Services and eero have common officers. Ms. Lindsay— eero's Chief Operating Officer—is technically employed by Amazon Services. (*See* Lindsay Dep. at 12:15-13:7.) Further, Ms. Lindsay testified in another action that upon Amazon's purchase of eero in 2019, *all* eero employees were reclassified as employees of Amazon Services. (*See* XR Dep. at 47:21-50:2.) Ms. Lindsay similarly testified in this action that all "eero employees" are actually Amazon Services employees—presumably, all eero officers are officers employed by and therefore common to Amazon Services. (*See* Lindsay Dep. at 13:3-12; 17:10-18:14.)

As to Factors 3 and 11, Amazon Services and eero have common business departments and the entities cannot keep their daily operations separate. Although Amazon Services is bigger than just eero, *all* of eero's business is conducted through Amazon Services. (*See* Lindsay Dep. at 59:16-19 ███████████████████████████████████████████████

███████████████████████████████████████) Thus it is merely a group of demarcated Amazon Services employees that work for eero, (*id.*), including *eero's* officers, (*id.* at 9:8-9). Accordingly, all eero business departments are common to Amazon Services.

Regarding Factor 4, the entities file consolidated financial statements, with Amazon.com, Inc. filing consolidated financial statements for all of its subsidiaries including Amazon Services and eero. (*See* Ex. 28 at AMZ-TT-133VENUE-00005683.) That Amazon Services pays the salaries of eero employees and that the parties file consolidated financial statements indicate the fifth and eighth factors also weigh in favor of finding alter ego.

Per Factor 9, eero does not receive business other than the business it receives from Amazon Services. eero's business involves selling eero products. Since Amazon Services employs all eero employees, all of the work done on eero products is therefore done by Amazon Services.

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████ this business is derived from Amazon Services' effort, and as currently structured, it is impossible for eero to receive business without Amazon Services because, *inter alia*, eero itself has no employees.

This Court has also found other factors persuasive in analyzing alter egos, including a "substantial degree of commingling of products" between the entities in question. *See WSOU Invs.*, No. 6:20-CV-00980-ADA, D.I. No. 137 at 16. Here too eero and Amazon Services have a substantial overlap in products in that Amazon Services sells *all* of eero's products through the

Amazon Services website. Also, as in *WSOU Invs.*, several Amazon Services employees, including

eero officers, represent to the public on LinkedIn that eero is their employer. (*See* Exs. 29-32; *see*

*also* No. 6:20-CV-00980-ADA, D.I. No. 137 at 16.) Finally, eero "employees" are readily able to

work at the Amazon Services Tech Hub at will and have regularly done so. (*See* Ex. 24; Lindsay

Dep. at 55:3-8, 83:23-84:1.) Thus, eero and Amazon Services have "common office space." *See*

*WSOU Invs.*, No. 6:20-CV-00980-ADA, D.I. No. 137 at 17.

    Taking the foregoing factors together, the lines between eero and Amazon Services are so

blurred that the two have become one and the two do not maintain "institutional independence."[4]

**C.      eero Has a Regular and Established Place of Business in This District**

    Defendants do not contest that venue is proper as to Amazon Services. Therefore, if

Amazon Services is eero's alter ego, there is no dispute as to venue. But even if the Court finds it

is not, all three *Cray* factors are nevertheless satisfied as to eero.

### 1.      The Tech Hub is a Physical Place in this District (*Cray* Factor 1)

    To satisfy the "physical place" requirement, the location must be "a physical, geographical

location in the district from which the business of the defendant is carried out." *Cray*, 871 F.3d at

1362. However, the physical place need not be "real property that the defendant must own[] or

lease" so long as business can physically be carried out at that location. *In re Google LLC*, 949

F.3d 1338, 1343 (Fed. Cir. 2020) (citing *Cray*, 871 F.3d at 1363).

    The Tech Hub satisfies the first *Cray* factor as to eero because it is a physical, geographical

location within this District that eero employees can access and regularly conduct business from.

It is located in Austin, and eero employees merely go through "a request process" to visit the Hub

---

[4] Unlike Defendants' alter ego argument (Prior Action, D.I. 61 at 7), Plaintiff cites more than just
subsidiary status to show that ***Amazon Services is the alter ego of eero***.

whereupon they formally request access to the facility via an online form.[5] (*See* Lindsay Dep. 23:2-21.) This form shows that access is granted as a matter of course: "General Building/Campus access will be ***automatically provided*** for the building you choose. …" (Ex. 33.) Upon visiting the Tech Hub, the employee "would be granted entry," "be able to conduct work from that space," and receive a desk from which they could work. (*See* Lindsay Dep. at 23:10-21; 28:14-20.) ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████ making it clear that the Tech Hub is a physical place from which eero employees conduct their work for eero. (*See* Ex. 24).

2.  **The Tech Hub is a Regular and Established Place of Business (*Cray* Factor 2)**

Under the second *Cray* factor, for a place to be "regular" it needs to "operate[] in a 'steady, uniform, orderly, and methodical' manner," to be "established" it needs to be stable "for a meaningful time period," (*see Cray*, 871 F.3d at 1362-63), and to be a "place of business" it need have "the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business,'" *see Google*, 949 F.3d at 1345.

The Tech Hub is a regular place of business of eero's because Amazon Services, which employs all eero employees, "*operates* the office space at the 'Tech Hub.'" (Mot. at 6.) The operations conducted at the Tech Hub are regular as to eero as it has been operating in a steady, uniform, and orderly manner for several years. (*See* Exs. 9-13.)

Finally, the Tech Hub is a "place of business" because for at least the last year eero employees have had a regular, physical presence there. In discovery, Defendants disclosed

---

[5] Even Amazon has touted the ease with which its employees can work from the Tech Hub, as it stated in another action that its employees "could work in the Austin offices while waiting to testify." (Ex. 34 at 7.)

badge-access information for the period from July 29, 2022 to March 1, 2023.[6] During that seven-month period, eero employees worked at the Tech Hub ███████████████████ ████████████████████████████████████████—and the ***only*** two weeks in which eero employees did not access the Tech Hub to work during this period were during the 2022 holiday season. (*See* Ex. 24.) Presumably, since all eero employees work exclusively on eero projects, these eero employees were carrying out eero's business when accessing and working from the Tech Hub. (*See* XR Dep. at 48:16-25, 49:2-9; Lindsay Dep. at 17:17-18:14.)

Furthermore, it bears mentioning that there are 78 eero employees who are specifically assigned to Austin, Texas in eero's and Amazon Services' system and are presumably permitted to request access to and work from the Tech Hub. (*See* Ex. 14.) Collectively, this is more than sufficient to demonstrate that eero employees had a regular, physical presence at the Tech Hub. As such, the Tech Hub is a regular and established place of business.

3.      **The Tech Hub is the Place "of" eero**

The final *Cray* factor requires that the regular and established place of business be a place of Defendants. In order for a third-party facility to be a place of a defendant, the defendant "must establish or ratify the place of business." *Cray*, 871 F.3d at 1363. "Relevant considerations include whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place," "the storing of materials at a place in the district so that they can be distributed or sold from that place," and "[m]arketing or advertisements … to the extent they indicate that the defendant itself holds out a place for its business." *Id.* Additional factors include:

---

[6] The July 29, 2022 date does not indicate a lack of regular, physical presence by eero in this District before that date. eero employees have been physically present here at least since 2019 when eero opened its WeWork office (*see* Ex. 35), notwithstanding its closure during COVID-19.

"the nature of [the defendant's] relationship with [its] representatives [in the District], or whether it has any other form of control over any of them"; "whether [the defendant] possesses, owns, leases, or rents the [facility] … or owns any of the equipment located there"; "whether any signage on, about, or relating to the [facility] associates the space as belonging to [the defendant]"; and "whether the location of the [facility] was specified by [the defendant] or whether [the facility owner] would need permission from [the defendant] to move [the facility] outside of the [District] or to stop working for [the defendant]." *In re ZTE*, 890 F.3d at 1015-16.

The Tech Hub satisfies the third *Cray* factor as it is a regular and established place of business *of eero*. eero, through its employees, exercises "other attributes of possession or control" over parts of the Tech Hub. For example, eero employees may access the Tech Hub upon request and, in doing so, are "granted entry," are "able to conduct work from that space," and receive a desk from which they can work. (*See* Lindsay Dep. at 23:10-21; 28:14-20.) Thus, eero has control over the employees who visit and work from the Tech Hub.

Moreover, eero has an employer-employee relationship with its representatives in this District. Though Amazon Services technically employs eero employees, all of the employees' work is done on behalf of eero, presumably at the direction of eero officers or supervisors. (*See* Lindsay Dep. at 12:18-22, 17:17-18:14; XR Dep. at 48:16-49:17.) Thus, eero has control over the employees who visit and work from the Tech Hub.

Furthermore, and contrary to what eero avers (*see* D.I. 33-21 ("Lindsay Decl."), ¶ 16), eero regularly markets and advertises jobs on Amazon's jobs website with Austin, Texas as the specific job location, even where the job is technically "remote," (*see* Exs. 16-23, 36.) It is also widely publicized and common knowledge in Austin that Amazon occupies large corporate office spaces

12

at the Tech Hub. (*See* Exs. 2, 37-38.) Thus, in advertising its jobs in this fashion on Amazon's website, eero holds itself out as having a place of business in Austin.

Based on the foregoing, the Tech Hub is **of eero**. Thus, even if the Court does not find that Amazon Services is the alter ego of eero, the Court should find that the Tech Hub is eero's regular and established place of business.

## II.   THE NORTHERN DISTRICT OF CALIFORNIA IS NOT A MORE CONVENIENT VENUE THAN THE WESTERN DISTRICT OF TEXAS

### A.   Legal Standard

In patent cases, motions to transfer under § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought" and it "place[s] discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Unless there is one correct outcome, it is "entirely within the district court's discretion to conclude" that the "factors of public interest or judicial economy can be of 'paramount consideration' … even if the convenience factors call for a different result." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir. 2010). The burden to prove that a case should be transferred falls squarely on Amazon. *Id.* at 1344. This burden is to show that the alternative venue is *clearly* more convenient, *In re Volkswagen, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008), which requires "materially more than a mere preponderance of convenience," *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

**B.      The Private Factors Weigh Against Transfer**

1.      <u>**The Relative Ease of Access to Sources of Proof Disfavors Transfer**</u>

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). Here, the circumstances are somewhat unique: the parties intend to rely heavily on discovery produced in the Prior Action and it is already in their possession. Defendants have not shown that this evidence is ***stored*** in the NDCA or that such evidence is ***relatively easier*** to access there, confirming that this factor does not support transfer. Although the parties have discussed a modest supplement to the prior discovery, (*e.g.*, to address additional accused sales since expert reports were originally exchanged), essentially all relevant evidence has already been produced.

Regarding physical evidence, the only such evidence produced in the Prior Action besides physical products located in Plaintiffs' counsel's office in New York were Plaintiffs' lab notebooks, which are in New Jersey. As discussed below, it is far easier for Plaintiff to travel to Waco than NDCA. Defendants ignore the location of Plaintiff's evidence and instead ambiguously state that "***to the extent*** there are physical records, they are ***generally*** kept and maintained in eero's San Francisco headquarters." (Lindsay Decl., ¶ 7) (emphasis added.) But no such evidence was deemed relevant by Defendants or produced in the Prior Action. Moreover, Ms. Lindsay testified that Amazon's Austin facilities contain physical evidence as well. (Lindsay Dep. at 60:13-61:7.)

As to electronic documents, again, Defendants ignore that Plaintiff's documents are stored in New Jersey. As to their own documents, Defendants again fail to show that any evidence is ***stored*** in NDCA. *Fintiv*, 2019 WL 4743678, at *2. Ms. Lindsay testified that these documents are "generally stored in electronic format in eero's cloud on servers primarily located in Oregon" but

may also be on third party servers in unspecified locations. (Lindsay Decl. ¶ 7.) Ms. Lindsay also repeatedly testified that eero's documents and source code are equally accessible "from any location with an internet connection." (Lindsay Dep. at 23:17-25:7.) To this point, eero currently has more than 80 employees that "work[] remotely from home in Texas, some of whom may reside in the Western District," including three engineers who work on software relating to the Accused Products. (Lindsay Decl., ¶ 10; Exs. 14, 41 at 8.) Amazon has admitted that these witnesses could access Amazon documents from within this District with relative ease. (*See* Lindsay Dep. at 23:17-25:7; Ex. 40.) Thus, Defendants have not shown that their documents are ***stored*** in the NDCA, but Defendants have shown that their documents are equally accessible from ***anywhere***, including this District. This factor weighs against transfer or is at most neutral.

### 2. The Availability of Compulsory Process to Secure the Attendance of Non-Party Witnesses Weighs Against Transfer.

"In this factor, the Court considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Fintiv*, 2019 WL 4743678, at *5 *citing Volkswagen*, 545 F.3d at 316. "This factor 'weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *EcoFactor, Inc. v. Google LLC*, No. 6-20-CV-00075-ADA, 2021 WL 1535413 (W.D. Tex. Apr. 16, 2021), at *3, (*quoting In re Apple, Inc.*, 581 Fed. App'x. 886, 889 (Fed. Cir. 2014)).

Amazon's purported third-party witnesses are cherry-picked names from prior art. (*See* Mot. at 14.) But the art identified in Defendants' contentions and in the patents-in-suit have authors and inventors globally, including within this Court's subpoena power in Texas. For instance, the file histories of the patents-in-suit reference prior art having inventors from Texas, all of whom are within this Court's subpoena power. (Exs. 42-47.) Amazon's reference to the Cisco Airespace

art is also of no event. Amazon admits that Cisco has other knowledgeable employees aside from Thomson,[7] (Mot. at 14), some of whom work in this District. (Exs. 48-49). This factor weighs against transfer.

### 3.    The Cost of Attendance for Willing Witnesses Strongly Weighs Against Transfer.

"The convenience of witnesses is the single most important factor in the transfer analysis." *EcoFactor*, 2021 WL 1535413 at *4. Courts "give more weight to the convenience of non-party witnesses than to party witnesses." *Id.* (citations omitted.) In fact, "the 'convenience of party witnesses is given little weight.'" *Id.* at *5.

Any burden to Amazon is minimal. Amazon has previously boasted to this Court how its significant presence in Austin lessens the burden for its employees to testify in this District as they "could work in the Austin offices while waiting" to do so. (Ex. 34 at 7.) Moreover, Amazon is a trillion dollar company with a massive Tech Hub in Austin and a substantial presence in Waco with its fulfillment center, which stores and distributes hundreds of thousands of products throughout the world. To say that the cost for its witnesses to travel to and testify in Waco is too burdensome is simply not credible, especially given that eero's most important technical witness, Ryan Thompson (eero's CTO, who was deposed twice in the Prior Action and identified by eero as a 30(b)(6) witness), resides in New York, and that Defendants have not demonstrated that their cherry-picked, California witnesses are not interchangeable with employees in Texas who could testify regarding the technical design, development, and operation of the accused eero devices.[8]

---

[7] According to Defendants' disclosures, Mr. Thomson is to be contacted through Defendants' outside counsel, suggesting his appearance is within Defendants' control. (*See* D.I. 33-11 at 5.)

[8] Amazon also has engineers knowledgeable about the connectivity of its eero Built-in, Echo, and other smart devices in this District, (*see* Lindsay Dep. at 21:12-21, 89:21-90:4; Ex. 34 at 2), which bears directly on TrackThings' damages, including convoyed sales of the eero Built-in products and Amazon's Echo smart home devices, (*see, e.g.*, D.I. 1 at ¶¶ 41, 60, 109, 160).

(*See* Ex. 14 (listing ███████████████████████████████████████████

████████████ as eero software and hardware engineers); Ex. 41 at 8; *see also* Lindsay Dep.

at 21:12-21, 32:3-6, 70:1-13, 72:12-16, 75:11-14.)

In contrast, it is far more taxing for TrackThings to litigate in NDCA. TrackThings and its

principals are in New Jersey, about 20 miles from Newark Airport, which offers cheaper and faster

flights to Austin than to San Francisco. (*Compare* Ex. 50 *with* Ex. 51.) Even with the drive from

Austin to Waco, the trip here is far less onerous than the trip to NDCA. Hotels are also much

cheaper in Waco than San Francisco (*compare* Ex. 52 *with* Ex. 53), a fact that may be lost on

Amazon, but certainly not TrackThings. This factor disfavors transfer. *See e.g.*, *E-System Design,*

*Inc. v. Mentor Graphics Corp.*, No. 4:17-cv-00682, 2018 WL 2463795, at *12 (E.D. Tex. June 1,

2018) (denying transfer where, *inter alia*, "transfer would shift the inconvenience of proceedings

entirely to [plaintiff]—a burden compounded by [plaintiff's] being a smaller company.")

4.   **All Other Practical Factors Weigh against Transfer Because of the
     Court's Familiarity with this Case and the Patents-in-Suit**

Defendants' assertion that the Court should discount its familiarity with the claims-at-issue

is unfounded. As described *supra* in the Procedural History Section, this Court has become

exceedingly familiar with the claims in this litigation, the patents-in-suit, and the technology of

the Accused Products from its work in the Prior Action.[9] Courts have regularly denied transfer,

and the Federal Circuit has regularly denied mandamus, in cases like this. *See In re Volkswagen*

*of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (finding it rational to deny transfer where

"familiarity with the patents could preserve time and resources" and "judicial economy is served

---

[9] Feb. 17, 2023 Hrg. Tr. at 32 ("THE COURT: … what would make me happy, given how invested
I am and you all are in this case, is I would like for Amazon to get their motion – whatever they're
going to file, if it's not an answer filed within a month.").

by having the same district court try [] cases involving the same patents"); *In re Vistaprint Ltd.*, 628 F.3d at 1346 (denying mandamus to transfer where, *inter alia*, a trial court became "very familiar" with an "asserted patent and the related technology during a prior litigation"); *United Servs. Auto. Ass'n v. PNC Bank N.A.*, No. 2:20-CV-00319-JRG, 2021 WL 4453590, at *4 (E.D. Tex. Sept. 29, 2021) (denying a motion to transfer in part because "this Court gained familiarity with the asserted patents … and the … technology" at issue.)

### C.    The Public Interest Factors Weigh Against Transfer

#### 1.    Administrative Difficulties Flowing From Court Congestion Weighs Heavily Against Transfer.

The relevant inquiry for this factor is "[t]he speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009); *In re Apple Inc.*, 979 F.3d 1332, 1343 (Fed. Cir. 2020). This Court consistently recognizes that this factor disfavors transfer to the NDCA.[10] That is particularly so here, as the parties have agreed to re-use discovery from the Prior Action and the case would proceed quickly to trial if it remains here. (*See* Ex. 55.) In contrast, a transfer would likely substantially extend the case schedule as the parties may have to, *inter alia,* re-litigate issues, prepare and serve contentions under different local rules, and a new court would need to get up to speed. This factor weighs strongly against transfer.

#### 2.    Local Interest in Having Localized Issues Decided at Home Weighs Against Transfer.

Defendants have admitted to this Court on several occasions that this District has a significant local interest in Amazon. (*See, e.g.*, Ex. 54 at 7 ("Austin [] has a significant local interest in Amazon."); Ex. 34 at 9 ("Austin also has a considerable interest in deciding this [patent

---

[10] *See, e.g.*, *BillJCo, LLC v. Apple, Inc.*, No. 6:21-cv-00528, 2022 WL 607890, at *8  (W.D. Tex. Mar. 1, 2022); *Monterey Rsch., LLC v. Broadcom Corp.*, No. W-21-CV-00542-ADA, 2022 WL 526242, at *15 (W.D. Tex. Feb. 21, 2022).

infringement] case."). Since these admissions, this District's local interest in Amazon has grown significantly. In February 2021, Waco approved a tax break of $9.45 million to subsidize a giant Amazon fulfillment center in this District. (Ex. 3.) As of August 2021, Amazon had more than 70,000 employees in Texas, and more than 3,000 technical and corporate employees working at its Austin "Tech Hub," (Exs. 2, 15), a number which has only grown since then. (Ex. 1; *compare* Prior Action, D.I. 41-1, ¶ 10 *with* Lindsay Decl. ¶ 10). There are also significant connections between this forum and the events giving rise to this suit.

eero has long had a substantial presence in this District, first with a WeWork office in Austin (*see* Ex. 35) and now using the Tech Hub. In 2021, eero had 71 Texas employees and now there are more than 80. (*Compare* Ex. 39 *with* Ex. 14.) Though Defendants attempt to downplay the importance of these employees, stating that "***most*** of the eero employees working in Texas were not involved in, and do not currently work on, the design and development of eero's mesh networking products," Defendants have admitted that eero Texas-based engineers "work on software related to the accused products" as well as "on IT or a B2B software." (Lindsay Decl., ¶ 13; Ex. 41 at 8). And, Defendants are continually seeking to expand their Austin eero presence with eero-related job openings on their website with Austin as the listed location. (Exs. 16-23, 36).

With regard to the transferee forum, Amazon vaguely states that "[t]he accused eero technology was designed and developed by eero and its employees in San Francisco." (Mot. at 18.) This is a far cry from the facts in *Flexiworld Techs. v. Amazon.com* which amounted to a "far more significant" presence in the transferee district. (D.I. 33-18 at 18 (finding that the local interest favored transfer where transferee forum was ***both*** parties' principle place of business).) Defendants here notably do not provide the number of eero employees that work in the NDCA, their respective

roles, and why Texas allegedly has no interest in this case despite over 80 eero employees and, more generally, over 88,000 Amazon employees in Texas. This factor weighs against transfer.

        3.    **Familiarity with Governing Law and Potential Conflicts of Law**

TrackThings agrees with Amazon that these factors are neutral.

## III.   IN THE ALTERNATIVE, IF THE COURT FINDS THAT VENUE IS IMPROPER, THE APPROPRIATE FORUM IS THE DISTRICT OF DELAWARE

In the alternative, under 28 U.S.C. § 1406(a), Defendants seek to transfer this action to the NDCA. However, if this Court finds that venue is improper here, the interests of justice demand that this case be transferred to the District of Delaware rather than the NDCA. First, venue is proper in Delaware because both Defendants are incorporated there. For this reason, litigating in Delaware cannot be inconvenient for any of the Defendants. *Intell. Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 756 (D. Del. 2012). Second, Delaware is close to: TrackThings, its physical and electronic documents, Mr. Gabara (the patents' inventor), and Defendants' critical witness—Ryan Thompson (eero's CTO). Third, TrackThings has asserted the same patents against NETGEAR in a currently pending Delaware case (Civil Action No. DDE-1:22-cv-00981), where that court has received briefing and argument on § 101 defenses and held a *Markman* hearing, with Magistrate Judge Hall issuing recommended constructions for the case. *See Regents of the Univ. of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) ("the interest of judicial economy may favor transfer to a court that has become familiar with the issues"). Accordingly, if transfer is necessary, the interests of justice favor transfer to the District of Delaware.

## IV.   CONCLUSION

Defendants' motion should be denied because venue is proper in this district with respect to all Defendants, and this District both is convenient and has a strong localized interest in the resolution of this case.

Dated: July 14, 2023

**GILLAM AND SMITH, LLP**

By:   */s/ Melissa R. Smith*
       Melissa Richards Smith
       Texas State Bar No. 24001351
       303 South Washington Avenue
       Marshall, Texas 75670
       Tel. (903) 934-8450
       Melissa@gilliamsmithlaw.com

       Timothy K. Gilman
       (admitted *pro hac vice*)
       Tim.Gilman@srz.com
       Christopher M. Gerson
       (admitted *pro hac vice*)
       Christopher.Gerson@srz.com
       Ryan J. Singer
       (admitted *pro hac vice*)
       Ryan.Singer@srz.com
       John P. Mixon
       (admitted *pro hac vice)*
       John.Mixon@srz.com

       Schulte Roth & Zabel LLP
       919 Third Avenue
       New York, NY  10022
       Telephone: 212.756.2000

       *Attorneys for Plaintiff TrackThings LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on July 14, 2023, the documents filed with the Clerk of Court via the Court's CM/ECF system under seal in the above-captioned case were subsequently served on all counsel of record by electronic mail.

<u>*/s/ Melissa R. Smith*</u>
Melissa R. Smith