UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| TRACKTHINGS LLC,<br><br>     Plaintiff,<br><br>  v.<br><br>AMAZON.COM SERVICES LLC, and EERO LLC,<br><br>     Defendants. | Civil Action No. 6:23-cv-00133-ADA<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR IMPROPER VENUE, AND TO TRANSFER VENUE**

## TABLE OF CONTENTS

**Page**

I. TRACKTHINGS CANNOT ESTABLISH PROPER VENUE OVER EERO. ...................................................................................................................1

    A. Amazon Services is not an alter ego of eero. ..............................................2

    B. Amazon's Tech Hub is not eero's regular and established places of business. ........................................................................................................6

II. THE NDCA IS THE CLEARLY MORE CONVENIENT FORUM. .....................8

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Akerblom v. Ezra Holdings Ltd.*,
   848 F. Supp. 2d 673 (S.D. Tex. 2012) .................................................................................5

*DynaEnergetics Eur. GmbH v. Yellow Jacket Oil Tools, LLC*,
   No. 6:20-cv01110-ADA, Dkt. 41 (W.D. Tex. Aug. 5, 2021) ...............................................2, 5

*Fractus, S.A. v. ZTE Corp.*,
   No. 2:17-CV-561-JRG, 2018 WL 11363369 (E.D. Tex. Sept. 28, 2018) .............................6, 7

*In re Apple Inc.*,
   No. 22-137, 2022 WL 1676400 (Fed. Cir. May 26, 2022) .....................................................10

*In re Cray Inc.*,
   871 F.3d 1355 (Fed. Cir. 2017) ............................................................................................6, 7

*In re Nintendo Co.*,
   589 F.3d 1194 (Fed. Cir. 2000) ................................................................................................8

*In re ZTE (USA) Inc.*,
   890 F.3d 1008 (Fed. Cir. 2018) ............................................................................................1, 8

*IngenioShare LLC v. Epic Games, Inc.*,
   No. W-21-CV-663-ADA, 2022 WL 827808 (W.D. Tex. Mar. 18, 2022) .................................8

*Nat'l Steel Car Ltd. v. Greenbrier Cos., Inc.*,
   No. 6:19-cv-721-ADA, 2020 WL 4289388 (W.D. Tex. July 27, 2020) ...............................2, 5

*Sightline Payments, LLC v. Everi Holdings Inc.*,
   No. 6:21-CV-1015-ADA, 2022 WL 2078215 (W.D. Tex. June 1, 2022) .........................5, 6, 7

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ...................................................................................................................5

*USTA Tech., LLC v. Google LLC*,
   No. 6:22-cv-01214-XR, Dkt. 80 (W.D. Tex. July 26, 2023) ..................................................10

*WSOU Invs., LLC v. Canon, Inc.*,
   No. 6:2-cv-980-ADA, Dkt. 137 (W.D. Tex. Feb. 25, 2022) ....................................................5

*Zentian Ltd. v. Apple, Inc.*,
   No. W-22-CV-122-ADA, Dkt. 101 (W.D. Tex. June 13, 2023) ..............................................9

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

**STATUTES**

28 U.S. C. § 1400(b) ............................................................................................................1

28 U.S. C. § 1404 .................................................................................................................1

28 U.S. C. § 1406 .................................................................................................................1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(a) ............................................................................................................9

This is the second case between plaintiff TrackThings and defendants Amazon and eero. TrackThings took extensive venue discovery in both cases and engaged in full fact discovery in the first case for nearly a year. Yet, it *still* cannot establish that venue is proper, let alone convenient, in this District. TrackThings does not dispute that eero lacks any physical presence of its own in this District, and thus argues that *Amazon's* offices in this District are *eero's* regular and established place of business. This argument fails, as Amazon and eero are separate corporate entities that operate independently and eero employees do not regularly work in Amazon's Austin offices. Because eero has no regular and established place of business in this District, TrackThings' claims, which focus on eero technology, cannot proceed here. But beyond this obvious defect in TrackThings' complaint, the case should not proceed in this District because it has no connection to this District. TrackThings cannot credibly argue otherwise: in the first case, it did not depose a *single* Amazon or eero employee in Texas, much less one that works on design, development, marketing, or finance of the accused products. The Court should dismiss the claims against eero for improper venue under § 1400(b) or transfer them to the Northern District of California along with the claims against Amazon under §§ 1404 and 1406.[1]

## I.     TRACKTHINGS CANNOT ESTABLISH PROPER VENUE OVER EERO.

TrackThings "bears the burden of establishing proper venue" over eero. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). TrackThings does not dispute that eero has no physical presence of its own in this District. (Opp. at 6.) It argues, however, that (1) eero is an alter ego of Amazon, and thus Amazon's presence in the District should be imputed to eero; and (2) because Amazon pays eero employees, the sporadic presence of eero personnel in Amazon's offices makes

---

[1] TrackThings has dismissed the common parent corporation of both Amazon.com Services LLC and eero LLC. (*See* Opp. at 3; Dkt. 44.) Thus, the Court's only stated basis for denying transfer in the *first* case—that Defendants had not established that the claims against Amazon.com, Inc. "could have been brought" in California—no longer precludes transfer.

them a place of business of eero. Both arguments fail.

### A. Amazon Services is not an alter ego of eero.

TrackThings seeks to impute the contacts of Amazon.com Services LLC ("Amazon Services" or "Amazon") to eero under a purported alter ego theory. (Opp. at 5.) To do so, TrackThings bears a "heavy burden to establish a degree of control" that overcomes the "presumption of institutional independence of related corporate entities." *Nat'l Steel Car Ltd. v. Greenbrier Cos., Inc.*, No. 6:19-cv-721-ADA, 2020 WL 4289388, at *2 (W.D. Tex. July 27, 2020) (internal citations omitted). Courts assessing "alter ego" arguments consider:

> (1) amount of stock owned by the parent of the subsidiary; (2) did the two corporations have separate headquarters; (3) did they have common officers and directors; (4) did they observe corporate formalities; (5) did they maintain separate accounting systems; (6) did the parent exercise complete authority over general policy; (7) did the subsidiary exercise complete authority over daily operations; (8) daily operations of the companies are kept separate; (9) parties with whom the companies come into contact are apprised of the companies' separate identities; (10) the companies share offices, employees, or financing; (11) one company pays wages to the other company's employees; (12) the employees of one corporation render services on behalf of the other corporation; (13) the companies file separate tax returns; (14) common business names; (15) the subsidiary operates with grossly inadequate capital; (16) the subsidiary receives no business except that given to it by the parent; (17) the parent caused the incorporation of the subsidiary; and (18) the corporations share property.

*DynaEnergetics Eur. GmbH v. Yellow Jacket Oil Tools, LLC*, No. 6:20-cv01110-ADA, Dkt. 41 at 3 (W.D. Tex. Aug. 5, 2021) (citation omitted). At least the following factors, and the undisputed record evidence, foreclose TrackThings' alter ego theory:

- *Factor 2*—Amazon and eero have separate headquarters in Seattle and San Francisco, respectively. (Comp. ¶¶ 3–4; Dkt. 33-21 ("Lindsay Decl.") ¶¶ 4, 6.)

- *Factor 3*—eero shares none of its officers with Amazon. (Young Reply Decl. Ex. 2.)

- *Factors 4, 5*—Amazon and eero strictly observe corporate formalities and have separate accounting systems. They treat the www.amazon.com retail website and the eero website as separate sales channels. (*Id*. Exs. 3–5; Lindsay Dep. at 64:24–65:22, 74:20-75:2.) Indeed, to sell

eero products on www.amazon.com retail website, Amazon purchases inventory in bulk from eero, just like any retailer. (Young Reply Decl. Ex. 3; Lindsay Dep. at 74:20-75:2.) The parties create purchase orders for these transactions and eero ships the purchased inventory to an Amazon facility. (Young Reply Decl. Ex. 3; Lindsay Dep. at 78:8–19.) Amazon pays eero for the products, and eero records this revenue on its own income statements and balance sheets. (Young Reply Decl. Ex. 4 at 4, Ex. 5 at 2; Lindsay Dep. 74:2–75:2, 78:8–19.) Amazon then distributes the inventory to customers without eero's involvement. (Lindsay Dep. at 78:8–19.) Amazon and eero record these sales in separate accounting systems and "[w]hen an eero product is sold on Amazon.com, the revenue from that individual sale is attributed to Amazon.com Services LLC." (Young Reply Decl. Ex. 4 at 4, Ex. 5 at 2; Lindsay Dep. at 64:21–65:22, 74:20–75:2.) "[A]ny sale that is not on Amazon.com" is treated as part of a separate channel "attributed to the eero entity." (Young Reply Decl. Exs. 4–5; Lindsay Dep. at 64:21–65:17.)

- *Factors 6, 7, 8*—Amazon does not exercise complete authority over eero's general policies and eero controls its own daily operations including design and operation of its website, eero marketing and accounting functions, and business conducted through its own separate sales channels. (Young Reply Decl. Ex. 3, Ex. 4 at 2–4, Ex. 5 at 2; Lindsay Dep. at 64:24–65:22, 74:20–75:2, 78:2–19, 79:1–18, 81:16–83:12.)

- *Factor 9*—eero and Amazon notify customers that the companies are separate entities. Defendants operate their own, branded websites, offer their own warranties, and eero contracts directly with business partners like ISPs and brick-and-mortar resellers. (Young Reply Decl. Ex. 6; Lindsay Dep. at 78:2–79:18.)

- *Factor 12*—"[A]ll of the [eero] employees' work is done on behalf of eero," not Amazon. (Opp. at 12; *see also* Lindsay Dep. at 17:14–20:18, 78:21–79:9.) eero engineers do not design Amazon products, and when eero and Amazon collaborate—for example on so-called "eero Built-

3

in products," where Amazon Echo smart speakers can operate as a node in an eero mesh wireless network—only eero engineers provide the eero networking functionality. (Lindsay Dep. at 65:5–8, 87:20–90:4; Lindsay Decl. ¶ 5.)

- *Factor 13*—eero files separate tax documents. (*See* Young Reply Decl. ¶ 8, Ex. 7.)

- *Factor 14*—eero and Amazon have different business names. (Compl. ¶¶ 3, 4.)

- *Factor 15*—eero "remain[s] financially sound enough in [its] own stead." (Opp. at 1.) eero has its own financial statements, earns its own revenue from the sale of eero devices and services, and does not rely exclusively on funding from Amazon. (*See* Young Reply Decl. Exs. 4, 5.)

- *Factor 16*—eero conducts business through its own website and with third parties, separately from any business it receives from Amazon. (Young Reply Decl. Exs. 4, 5; Lindsay Dep. at 64:24–65:22, 74:20–75:2.)

- *Factor 17*—Amazon did not direct the incorporation of eero LLC or form the company; it acquired eero in 2019 long after its incorporation. (Lindsay Decl. ¶¶ 4, 6.)

TrackThings does not meaningfully dispute any of these facts. (*See* Opp. at 5–9.) However, it argues implausibly that because Amazon.com Services LLC is the employer of record for both Amazon and eero personnel and pays salaries, "eero itself has no employees" and cannot have its own officers, business operations, or products of its own.² (Opp. at 8.) TrackThings cites no authority supporting this argument, nor does any exist. (*Id*.) Indeed, TrackThings *admits* that "all eero employees work exclusively on eero projects," and "[t]hough Amazon Services technically employs eero employees, all of the [eero] employees' work is done on behalf of eero, presumably at the direction of eero officers and supervisors." (Opp. at 11–12; *see also* Lindsay Dep. at 17:17–18 (eero employees are "those whose work is dedicated to eero projects or

---

² On this basis, TrackThings contends that Factors 2, 3, 5, 8, 9 and 11 support alter ego theory. (Opp. at 7–8.)

4

products").) The Court should reject TrackThings' unsupported argument, which would require ignoring this substantial evidence of eero and Amazon's corporate separateness.

TrackThings' remaining arguments—that eero has no common stock, eero's financial information is consolidated into Amazon's financial statements, and that Amazon pays the salary of eero employees (Opp. at 7–8)—are common in virtually any parent-subsidiary relationship, and should not give rise to a finding of alter ego.³ *United States v. Bestfoods*, 524 U.S. 51, 72 (1998) ("activities . . . consistent with" a standard parent-subsidiary relationship do not give rise to alter ego liability) (internal citations omitted); *see also Akerblom v. Ezra Holdings Ltd.*, 848 F. Supp. 2d 673, 690 (S.D. Tex. 2012) (defendants' "control" of "payroll, human resources, and overall decision making" are not "clear evidence" of something other than a typical parent-subsidiary relationship). But even if these factors could support an alter ego theory, they are substantially outweighed here by the remaining factors discussed above. *See Greenbrier*, 2020 WL 4289388, at *5 ("[e]ven where some factors suggest that one entity is the alter ego of another, the maintenance of corporate formalities tips in favor of finding that the entities are not alter egos"). TrackThings' alter ego showing falls far short of those this Court has previously found insufficient.⁴ The Court should reject TrackThings' argument just as it did in these cases.

---

³ TrackThings also argues incorrectly that the "commingling" of inventory, discussed in *WSOU Invs., LLC v. Canon, Inc.*, No. 6:2-cv-980-ADA, Dkt. 137 (W.D. Tex. Feb. 25, 2022) ("*WSOU*"), supports its alter ego theory. (Opp. at 8.) There, the defendants' products "were all stored at the same facilities" in Texas (*WSOU* at 16); here, in contrast, any eero products stored at Amazon fulfillment centers were purchased by Amazon from eero in an arms-length transaction. (Lindsay Dep. at 78:3–79:9.) These products are not "commingled" eero inventory.

⁴ *See, e.g.*, *Yellow Jacket* at 6–8 (common stock ownership, shared headquarters, shared employees, officers, and property insufficient); *Greenbrier*, at *2 (common stock, shared executives, business departments, and bank account, joint tax returns, and parent control over distributions insufficient) (citation omitted); *Sightline Payments, LLC v. Everi Holdings Inc.*, No. 6:21-CV-1015-ADA, 2022 WL 2078215, at *4–7 (W.D. Tex. June 1, 2022) (common stock, complete overlap of officers, shared business departments, marketing platforms, and websites, and entities lending to one another insufficient).

5

### B. Amazon's Tech Hub is not eero's regular and established places of business.[5]

TrackThings alternatively contends that eero's purported use of Amazon's "Tech Hub" in Austin makes that facility a regular and established place of business of eero. (Opp. at 9.) But no evidence suggests that eero uses Amazon's Austin Tech Hub in a "steady, uniform, orderly, and methodical manner" so as to ratify it as eero's place of business. *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017) (citations and quotations omitted). TrackThings' arguments each fail.

First, TrackThings argues that the "Tech Hub is a regular [and established] place of business *of eero's* because *Amazon Services*, which employs all eero employees, 'operates the office space at the Tech Hub.'" (Opp. at 10 (emphasis added).) This is simply a rehash of TrackThings' alter ego argument. As discussed above, Amazon and eero maintain strict corporate formalities, none of the relevant factors support TrackThings' alter ego theory, and no authority suggests that a parent being the employer of record or paying salaries of the subsidiary's employees makes the subsidiary an alter ego. The only support TrackThings identifies for its argument—that *Amazon* is the owner of the Tech Hub—has nothing to do with eero and does not show that eero ratifies the Tech Hub as its own place of business. (*See* Dkt. 45-12 ("Mixon Decl.") Exs. 9–13).)

Second, TrackThings contends that the Tech Hub is eero's place of business because "eero employees . . . are 'granted entry,' are 'able to conduct work from that space,' and receive a desk from which they can work." (Opp. at 12.) But an employee's occasional use of third-party office space within a district does not make that office a regular place of business. *See Sightline*, 2022 WL 2078215, at *3–4; *Fractus, S.A. v. ZTE Corp.*, No. 2:17-CV-561-JRG, 2018 WL 11363369, at *2 (E.D. Tex. Sept. 28, 2018). The relevant inquiry is the extent of the *actual* use of such offices, not the theoretical ability of eero employees to use them. *See, e.g.*, *Sightline*, 2022 WL 2078215,

---

[5] eero does not own, lease, or operate any facilities in the Western District of Texas, including Amazon's "Tech Hub" in Austin. (Rawson Decl. ¶¶ 6–7; Lindsay Decl. ¶ 9.)

at *3–4; *Fractus,* 2018 WL 11363369, at *2. And the sporadic presence of eero employees at Amazon's Tech Hub "cannot create venue." *In re Cray*, 871 F.3d at 1362.

Contrary to TrackThings' assertion, the "badge report" produced by eero in venue discovery does not show otherwise. (Opp. at 10–11.) That report shows that certain eero remote employees based in Texas occasionally work at Amazon's Austin offices, using "floating desk space . . . available to any visitor to an Amazon office location." (Lindsay Dep. at 28:14–20.) eero's remote employees are not assigned to desks at Amazon's Tech Hub. (*Id*. at 28:7–20.) eero employees can apply for "entry to the spaces available to visitors of that office" and receive "ad hoc access to [that] space." (*Id*. at 23:2–16, 28:14–20, 30:16-31:4.) The report shows that the 77 remote employees still in Texas used Amazon offices an average of less than one time per person over a seven-month period. (*See* Lindsay Dep. at 69:3–21 (Ryan Haultain is no longer in Austin); Mixon Decl. Ex. 24.) And the twelve remaining employees that actually used offices at the Tech Hub did so an average of just six times over the same period. (*Id*.) "The designated space . . . was not exclusively used for" eero's employees and "the office set aside for their use is also used for other visiting guests and is repurposed when not in use by them." *Fractus*, 2018 WL 11363369 at *2 (two part-time employees working at a facility three days a week did not weigh against transfer).

Next, TrackThings argues that the Tech Hub is a place of business of eero because, purportedly, "eero has control over the employees who visit and work from the Tech Hub." (Opp. at 12.) TrackThings is wrong. No evidence suggests that eero "controls" the remote Texas employees that work from the Tech Hub. At most, eero *allows* these employees to work there, and merely allowing employees to work at a location within a district is insufficient to give rise to venue. *See In re Cray Inc.*, 871 F.3d at 1366 (not enough "that there exists within the district a physical location where an employee of the defendant carries on certain work for his employer"). In any event, control over employees is only one factor courts consider; nearly all of the others

7

weigh against ratification. *See In re ZTE*, 890 F.3d at 1015–16.

Finally, TrackThings argues that the Tech Hub is eero's place of business because "eero regularly markets and advertises jobs on Amazon's website [in] Austin," and that it is "common knowledge" that *Amazon* operates there. (Opp. at 12–13.) But "marketing for a job position in Texas does not impute venue" and "advertised positions allegedly identif[ying] Austin, Texas as a primary location for [a] job" are insufficient. *IngenioShare LLC v. Epic Games, Inc.*, No. W-21-CV-663-ADA, 2022 WL 827808, at *4 (W.D. Tex. Mar. 18, 2022). The Court should reject TrackThings' argument that Amazon's Austin Tech Hub is a place of business of eero and should dismiss the claims against eero for improper venue or transfer them to the NDCA.

## II.     THE NDCA IS THE CLEARLY MORE CONVENIENT FORUM.

Any claims that remain should be transferred to the NDCA because that is the far more convenient venue.[6] New Jersey-based TrackThings has no connection to Texas (Opp. at 17) and Federal and Fifth Circuit law forbid consideration of its "preference" for this District. *See In re Nintendo Co.*, 589 F.3d 1194, 1200 (Fed. Cir. 2000). The convenience factors strongly favor transfer or are, at worst, neutral.

*Relative ease of access to proof.* TrackThings admits that its own physical evidence is in New Jersey, not Texas. (Opp. at 14.) It is undisputed that Defendants' physical documents are maintained in the San Francisco area. (*Id*.) The Court should view with great skepticism TrackThings' suggestion that it may seek discovery from the "more than 80" eero employees in this District (*id*. at 15), as it did not do so in nearly a year of fact discovery in the first case involving

---

[6] TrackThings alternatively requests transfer to the District of Delaware. (Opp. at 20.) But it does not explain why that forum would be more convenient than the NDCA, where eero develops the accused technology. (Lindsay Decl. ¶¶ 5, 6.) While eero is incorporated in Delaware, it maintains no offices there and all but one of the eero and Amazon employees TrackThings chose to depose in the first case are on the opposite side of the country. (Compl. ¶¶ 3, 4; Young Reply Decl. ¶ 11.) Delaware is far less convenient than the NDCA.

8

the same accused products and patents. (Young Reply Decl. ¶ 11.) This factor favors transfer.

*Service of process on non-party witnesses.* Allan Thomson, who Defendants identified in their final Rule 26(a) disclosures in the first case, has specific knowledge regarding the integration of Airespace technology into Cisco systems and provided a detailed declaration describing the same. (*Id*. ¶¶ 9, 10, Exs. 8, 9.) Defendants expect to present this reference as invalidating prior art at trial. Defendants also identify individuals directly associated with specific references relied on in their opening invalidity expert report. (*Id*.) This factor favors transfer.

*Attendance of willing witnesses.* TrackThings does not dispute that eero has relevant witnesses in the NDCA, and indeed has deposed four such witnesses already. The presence of "teams working on the accused functionality of the accused products [] largely based in NDCA" favors transfer despite others residing in Texas. *Zentian Ltd. v. Apple, Inc.*, No. W-22-CV-122-ADA, Dkt. 101 at 13 (W.D. Tex. June 13, 2023). TrackThings has deposed *no witnesses* in this District, despite its suggestion that eero and Amazon employees in the two districts are "interchangeable."[7] (Opp. at 15–16; Young Reply Decl. ¶ 11.) While TrackThings cites the time and cost of travel from New Jersey to *Austin*, it ignores that the time and cost of travel to *Waco* is substantially different. (Mot. at 15–16; Opp. at 17.) TrackThings complains about the cost of hotels in the NDCA (Opp. at 17), but this is irrelevant: "the relevant question does not focus on 'hotel discounts in this District' . . . but on 'the cost and convenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *USTA Tech., LLC v. Google LLC*, No. 6:22-cv-01214-XR, Dkt. 80

---

[7] TrackThings argues that Amazon engineers have knowledge of eero Built-in products. (Opp. at 1, 16 n.8.) But the only two Amazon engineers on that project *did not work on design or implementation of the accused Truemesh functionality*. (Lindsay Dep. at 87:20–90:4.) One of those engineers is in Austin, the other is in California; both "report on the same team to a manager in California." (*Id*.) TrackThings did not depose either one. (Young Reply Decl. ¶ 11.)

("*USTA*") at 7 (W.D. Tex. July 26, 2023) (citations omitted)). The majority of those witnesses are in California. This factor heavily favors transfer.

*Judicial efficiency and court congestion.* TrackThings argues that the Court's "exceeding[] familiar[ity]" with the case weighs against transfer. (Opp. at 17–18.) But the Court acknowledged its own minimal investment in the case, as its "only [] involvement to date would have been the Markman ruling."[8] (Feb. 17, 2023 Hrg. Tr. at 25:1–3.) Moreover, the parties expect to reuse discovery from the first case and do not expect to reargue claim construction, even upon transfer. (*Id*. at 24:6–25:21.) This leaves few *pre-trial* issues for the parties to re-litigate in the NDCA, so transfer would create no inefficiency, while making trial significantly more convenient. These factors do not weigh against transfer.[9]

*Local interest.* TrackThings points at most to the kind of generalized interest that the Federal Circuit has held irrelevant to venue as a matter of law. (Opp. at 18–20); *see UTSA* at 10–11 (quoting *In re Apple Inc.*, No. 2022-137, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022) (requiring a district's "connection to the locus of the events giving rise to the dispute"). There is no reasonable dispute that the center of gravity of this dispute is California, where the accused technology was designed and developed and where nearly all relevant eero witnesses are based.[10] (Lindsay Decl. at ¶¶ 3, 5–6, 13; Young Reply Decl. ¶¶ 13–14.)[11]

---

[8] The cases TrackThings cites are inapplicable. *Volkswagen* and *Vistaprint* involved co-pending litigation over the same patents, so keeping them in the same district was more efficient. And in *PNC Bank*, the court was familiar with subject matter because it presided over a full jury trial on the same patents. (*See* Opp. at 17–18 (citations omitted).) No such facts exist here.

[9] TrackThings cites *BillJCo* where the Federal Circuit granted mandamus and transferred to the NDCA. *See In re Apple Inc.*, No. 22-137, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022).

[10] The arguments made by Amazon in the *Hammond* and *Freshub* cases are irrelevant. (*See* Opp. at 18–19; Mixon Decl. Exs. 34, 54.) Neither case involved eero, and both involved a motion for *intra-district* transfer where Austin was far more convenient than Waco.

[11] TrackThings' other purported connections to this District are irrelevant—unrelated Amazon employees, tax breaks for an Amazon fulfillment center, and WeWork offices that closed three years before this case was filed have nothing to do with the relative convenience of this District.

Dated: August 4, 2023                     Respectfully submitted,

*/s/ Eric B. Young*
J. David Hadden, CSB No. 176148
(Admitted W.D. Tex.)
Email: dhadden@fenwick.com
Saina S. Shamilov, CSB No. 215636
(Admitted W.D. Tex.)
Email: sshamilov@fenwick.com
Ravi R. Ranganath, CSB 272981
(Admitted W.D. Tex.)
Email: rranganath@fenwick.com
Vigen Salmastlian, CSB No. 276846
(Admitted W.D. Tex.)
Email: vsalmastlian@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:   650.988.8500
Facsimile:    650.938.5200

Eric B. Young, CSB No. 318754
(Admitted W.D. Tex.)
Email: eyoung@fenwick.com
Gregory M. Sefian, CSB No. 341802
(*Pro Hac Vice*)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:  415.875.2300
Facsimile:   415.281.1350

Daniel W. Ledesma, NY Bar No. 5564299
(Admitted W.D. Tex.)
Email: dledesma@fenwick.com
FENWICK & WEST LLP
902 Broadway, Ste. 14
New York, NY 10010
Telephone:   212.430.2639


Counsel for Defendants
AMAZON.COM SERVICES LLC, and
EERO LLC

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record are being served with a copy of the foregoing document via the Court's CM/ECF system and that a true and correct copy of the foregoing document was served via electronic mail to counsel of record on August 4, 2023.

*/s/ Eric B. Young*
Eric B. Young
